# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Darnell R. Hicks,

                                    Plaintiff,

        v.                                    1:25-CV-1598 (MAD/MJK)

Trooper D.M. Bricker #996, *et. al.*,

                                    Defendants.

---

Shakena Martin,

                                    Plaintiff,

        v.                                    1:25-CV-1599 (MAD/MJK)

Trooper D.M. Bricker, *et. al.*,

                                    Defendants.

---

Darnell R. Hicks, Plaintiff *pro se*
Shakena Martin, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER & REPORT- RECOMMENDATION

On November 13, 2025, both Hicks and Martin began these actions by filing Complaints and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Hicks Complaint, Dkt. 1; Hicks *IFP* application, Dkt. 2; Martin Complaint, Dkt. 1; Martin *IFP* application, Dkt. 2). The Clerk

sent Hicks's and Martin's Complaints and *IFP* applications to this Court for review.

## I.    BACKGROUND

On November 7, 2025, Hicks and Martin left a mechanic shop in separate cars. (Hicks Complaint, Dkt. 1, pg. 1, at ¶1).[1] The two merged onto I-287 "northbound toward Albany, traveling approximately 72-73 MPH." (*Id.* at ¶2). While on the highway, Hicks signaled to merge right. (*Id.* at ¶3). A New York State Trooper vehicle approached Hicks, followed him, and "tried to position itself between" Hicks and Martin. (*Id.* at ¶4). At some point, N.Y.S. Trooper Bricker turned on the emergency lights indicating Hicks should pull over. (*Id.* at ¶¶4-5).

Once Bricker and Hicks pulled over, Bricker got out of his car and told Hicks "the stop was for window tints." (*Id.* at ¶6). At the same time, Martin "stopped on the highway shoulder near the guardrail and began recording the encounter [on] her phone." (Martin Complaint, Dkt. 1, pg. 2, at ¶12). Hicks then told Bricker that he "don't talk to police." (Hicks Complaint, Dkt. 1, pg. 2, at ¶7). Bricker then ordered Hicks out of his car. (*Id.* at ¶8). While Martin was recording, she exited her car and said,

---

[1]  All page citations refer to the CM/ECF pagination.

"that's my boyfriend". *See* (Martin Complaint, Dkt. 1, pg. 2, at ¶14);

(Hicks Complaint, Dkt. 1, pg. 2, ¶10). Bricker then ordered Martin "to

get back in [her] car." (Martin Complaint, Dkt. 1, pg. 2, at ¶14). Martin

complied. (*Id.* at ¶15). Shortly after this, two additional troopers—

including Trooper #5640—arrived at the scene. (Martin Complaint, Dkt.

1, pg. 2, at ¶2). Trooper #5640 approached Martin and told her that he

would ticket her for blocking pavement and ordered Martin to move.

(*Id.* at ¶16).  Martin told Trooper #5640 that she would leave and

return, "drove around the corner, parked safely, and walked back to the

scene." (*Id.* at ¶17). When she returned, Martin continued recording the

incident. (*Id.* at ¶18). Trooper #5640 noticed Martin and ordered N.Y.S.

Trooper J.C. Jennings to issue Martin a ticket for guarding a vehicle.

(*Id.*; Hicks Complaint, Dkt. 1, pg. 2, at ¶12).

Trooper #5640 then opened Hicks's car door, "rolled down the rear

windows without consent, circled the car, kicked the wheels, and looked

inside. (Hicks Complaint, Dkt. 1, pg. 2, at ¶14). Ultimately, Bricker

ticketed Hicks for tailgating and speeding. (*Id.* at ¶ 15). Similarly, one

of the troopers issued Martin a ticket. (Martin Complaint, Dkt. 1, pg. 3,

at ¶31).

## II.    *IFP* APPLICATION

Both Hicks and Martin declare in their *IFP* applications that they
are unable to pay the filing fee. (Hicks *IFP* application, Dkt. 2; Martin
*IFP* application, Dkt. 2). And after reviewing both applications, this
Court finds that Hicks and Martin are financially eligible for *IFP*
status.

## III.    STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial
criteria to proceed *IFP*, courts must also review the sufficiency of the
allegations in the complaint under 28 U.S.C. § 1915. That statute
requires a court to dismiss a case—at any time—if it determines that
the action is (1) frivolous or malicious; (2) fails to state a claim on which
relief may be granted; or (3) seeks monetary relief against a defendant
who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must
consider whether the complaint lacks an arguable basis in law or in
fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on
other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28
U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent
abuses of court process and to discourage the waste of judicial

resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV. DISCUSSION

Below, the Court analyzes the claims in both Hicks's and Martin's Complaints. In Section IV.A., the Court recommends the District Court consolidate Hicks's and Martin's Complaints because there are common issues of law and fact. In Sections IV.B. through IV.G., the Court analyzes Hicks's and Martin's claim. The Court recommends the District Court dismiss the claims *without prejudice* and *with leave to amend* in each section. Finally, in Section IV. H., the Court recommends

the District Court find that there is no futility with respect to Hicks's and Martin's ability to amend their Complaints.

### A. The Court recommends the District Court consolidate Hicks's and Martin's Complaints to conserve judicial resources and increase efficiency.

The Court recommends consolidating Hicks's and Martin's Complaints for the purposes of initial review. Courts can "order all actions consolidated if they involve 'common issues of law or fact.'" *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (quoting Fed. R. Civ. P. 42(a)). District courts have broad discretion when determining whether to consolidate cases. *Id.* Here, Hicks's and Martin's Complaints arise out of one incident. *Compare* (Hicks Complaint, Dkt. 1) *with* (Martin Complaint, Dkt. 1). Likewise, both Complaints raise nearly the same legal claims. *Compare* (Hicks Complaint, Dkt. 1) *with* (Martin Complaint, Dkt. 1). Because there are common issues of law *and* fact, the Court recommends the District Court consolidate the Complaints to conserve judicial resources and increase efficiency.

**B. The District Court should reject Hicks's and Martin's illegal seizure claims.**

Neither Hicks's nor Martin's illegal seizure claims should survive § 1915 review. To plausibly allege a Fourth Amendment illegal seizure claim, plaintiffs must prove that they were seized, and that seizure was unreasonable. Here, Martin does not plausibly allege she was seized, and Hicks does not plausibly allege that his seizure was unreasonable. As a result, this Court recommends the District Court dismiss Hicks's and Martin's claims *without prejudice* and *with leave to amend.*

The Fourth Amendment prohibits illegal seizures. U.S. Const. Amend. IV. "In order to determine whether an individual's Fourth Amendment rights have been violated, the Court must engage in a two-part analysis: (1) considering all of the circumstances of the case, was there a 'seizure' within the meaning of the Fourth Amendment; and (2) if there was a seizure, was such seizure reasonable." *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 270 (W.D.N.Y. 2016). As to the first prong: "an individual is seized for purposes of the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains [the individual's] freedom of movement." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 246 (E.D.N.Y. 2013) (cleaned up). As to

the second prong: "decision[s] to stop an automobile [are] reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996)

The District Court should reject Hicks's illegal seizure claim. During the incident, Bricker activated his emergency lights while driving behind Hicks. (Hicks Complaint, Dkt. 1, pg. 2, at ¶4). This caused Hicks to pull over. (*Id.* at ¶5). This "temporary detention of" Hicks "during the stop of" his "automobile by the police, even if only for a brief period and for a limited purpose," constituted a seizure under the Fourth Amendment. *Whren*, 517 U.S. at 810.

But Hicks alleges that the search was reasonable. Hicks pleaded that he was driving on I-287 northbound, traveling approximately 72-73 mph. (Hicks Complaint, Dkt. 1, pg. 1, at ¶2). That is a violation of New York law. *See* N.Y. Veh. & Traf. Law § 1180-a (noting that New York's maximum speed limit is sixty-five miles per hour). Speeding is "an offense that can give rise to probable cause[.]" *Guillen v. City of New York*, 625 F. Supp. 3d 139, 151 (S.D.N.Y. 2022). And because this is true, the seizure was not unreasonable. In consequence, the District Court should reject Hicks's illegal seizure claim.

Hicks's counterargument—that Bricker's ticketing of him for speeding is pretextual—is unpersuasive. (Hicks Complaint, Dkt. 1, pg. 2, at ¶15). "A police officer who observes a traffic violation may stop a car without regard to what a reasonable officer would do under the circumstances and without regard to the officer's subjective intent. In other words, an officer's use of a traffic violation as a pretext to stop a car . . . is of no constitutional significance." *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir. 1998) (Pooler, J.). Pretextual traffic violations are permissible "as long as the officer saw a violation." *United States v. Stewart*, 604 F. Supp. 2d 676, 681 (S.D.N.Y. 2009). Doubtless, Bricker saw Hicks speeding. Bricker tailgated Hicks, allowing Bricker to gauge Hicks's speed. Beyond that, Hicks pleaded that he was speeding. (Hicks Complaint, Dkt. 1, pg. 1, at ¶2). So Hicks's argument that Bricker's stop was pretextual does not change the analysis.

The District Court should also reject Martin's illegal seizure claim because she was not seized. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave." *See United States v.*

*Mendenhall,* 446 U.S. 544, 554 (1980). Here, Martin never alleges that any state trooper stopped her. (Martin Complaint, Dkt. 1, at pg. 2). Rather, Martin, on her own, "stopped on the highway shoulder near the guard rail and began recording" Bricker's stop of Hicks. (*Id.* at ¶12). In fact, Trooper #5640 told Martin to move her car, which would indicate that the troopers wanted her to leave. In other words, she was not seized within the meaning of the Fourth Amendment.[2]

## C. The District Court should reject Hicks's and Martin's illegal search claims.

Neither Hicks's nor Martin's illegal search claims should survive §1915 review. To plausibly allege a Fourth Amendment illegal seizure claim, plaintiffs must show that the police officer defendant physically intruded into a constitutionally protected area, and if they did not, plaintiffs must plausibly allege that the police officer defendant violated the plaintiff's reasonable expectation of privacy. Here, neither Hicks nor Martin can make any such showing. As a result, this Court recommends the District Court dismiss Hicks's and Martin's claims *without prejudice* and *with leave to amend.*

---

[2]  The District Court should also reject Martin's New York Civil Rights Law §8 right of search and seizure claim because it is duplicative of her illegal search claim.

A Fourth Amendment search "occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information." *Jennings v. Decker*, 359 F. Supp. 3d 196, 207–08 (N.D.N.Y. 2019). To determine whether police conduct is a Fourth Amendment search, courts examine whether the police officer "physically intrudes on a constitutionally protected area and, if not, whether the officer violates a person's reasonable expectation of privacy." *United States v. Weaver*, 9 F.4th 129, 141 (2d Cir. 2021) (cleaned up). "The later . . . test focuses not on the presence or absence of a physical intrusion, but instead on whether the government violates a subjective expectation of privacy that society recognizes as reasonable." *Id.* (internal citations omitted).

Examining Hicks's claim first, the Court finds that there is no search. To begin, Hicks does not allege that there was a physical intrusion into his car. He notes that "Trooper #5640 performed an 'inventory-style' search by circling the vehicle, kicking wheels, and peering inside." (Hicks Complaint, Dkt. 1, at ¶14). But "mere visual

observation does not constitute a search." *United States v. Jones*, 565 U.S. 400, 412 (2012).

Turning to Martin's claim, she does not plausibly allege a search. Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). To survive dismissal

for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up). Here, Martin does not allege that anyone searched her, her car, or anything else. That is not enough to plausibly allege an illegal search claim.

### D. The District Court should reject Hicks's and Martin's First Amendment retaliation claims.

Like the Fourth Amendment claims, Hicks's and Martin's First Amendment retaliation claims should be dismissed. To plausibly allege a First Amendment retaliation claim, plaintiffs must allege they have a First Amendment protected interest, the defendants took adverse actions because of the plaintiff's exercise of that right, and the adverse actions chilled the plaintiff's speech. Here, both Complaints fail to plausibly allege a First Amendment retaliation claim. As a result, this Court recommends the District Court dismiss Hicks's and Martin's claims *without prejudice* and *with leave to amend*.

"The government may not retaliate against an individual for engaging in protected speech under the First Amendment." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 136 (N.D.N.Y. 2024) (Hurd J.). To plausibly allege a First Amendment retaliation claim, plaintiffs must prove that they: (1) have "an interested protected by the First Amendment; (2) the defendants actions were motivated or substantially caused by" the plaintiff's "exercise of that right; and (3) the defendants actions effectively chilled the exercise of the plaintiff's First Amendment rights." *Galarza v. Monti*, 327 F. Supp. 3d 594, 603 (S.D.N.Y. 2018). "The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive.*" Caravalho v. City of New York*, 732 F. App'x. 18, 23 (2d Cir. 2018) (summary order).

Hicks does not plausibly allege a First Amendment retaliation claim. Assuming, without deciding, that the First Amendment protects Hicks's ability to refuse to answer Bricker's questions, Hicks has not shown that Bricker's ticketing of him for speeding was "motivated or substantially caused by exercise of his First Amendment" rights. *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 302

(S.D.N.Y. 2020). In fact, Bricker's ticketing of Hicks was "objectively reasonable given the existence of probable cause to believe" Hicks "had committed [a] traffic infraction[]." *Id.* (finding that the plaintiff failed to state a First Amendment retaliation claim). It does not matter that Hicks used the words "in immediate retaliation" in his Complaint. (Hicks Complaint, Dkt. 1, pg. 2, at ¶8). "Where there is probable cause to believe that a plaintiff has committed a crime, ... the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary." *Lederman v. Benepe*, No. 12-CV-6028, 2014 WL 1318356, at *9 (S.D.N.Y. 2014). Here, as in *Hawthorne by Hawthorne*, the District Court should find that Hicks has failed to plead a First Amendment retaliation claim because probable cause existed to stop Hicks.

Likewise Martin fails to plausibly a First Amendment retaliation claim. Martin pleaded "Trooper #5640 began fabricating charges against her in retaliation for filming. He then ordered . . . Jennings . . . to write and sign the ticket[.]" (Martin Complaint, Dkt. 1, pg. 2, at ¶18). The Complaint gives no further detail as to the retaliation claim. Under Rule 8 and *Iqbal*, that is not enough. *See Ashcroft*, 556 U.S. at 678.

**E. The District Court should reject Hicks's *Monell* claim.**

To plausibly allege municipal liability claims, plaintiffs must plead that the municipality had a policy or practice that caused the plaintiff's constitutional deprivation. Hicks's Complaint does not plead anything of the sort. As a result, the District Court should dismiss Hicks's Complaint as to this issue *without prejudice* and *with leave to amend*.

Under § 1983, a municipality is responsible only for its "own illegal acts" and cannot be held vicariously liable for the constitutional violations of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may be held liable only where an "official municipal policy" causes the constitutional deprivation. *Id.* (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). "Official municipal policy" includes laws passed by legislators, acts of policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Plaintiffs may satisfy the policy or custom requirement in one of four ways: (1) "a formal policy officially endorsed by the municipality;" (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in

question;" (3) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware;" or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

The District Court should dismiss Hicks's *Monell* claims. Hicks's conclusory statement—that there was a "failure to train and supervise"—is insufficient to plausibly allege a *Monell* claim. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of [their] constitutional rights resulted from a municipal custom or policy."). That said, the Court recommends dismissing Hicks's *Monell* claim *without prejudice* and *with leave to amend*.

## F. The District Court should reject Hicks's and Martin's Fourteenth Amendment Due Process Clause fabricated evidence claim.

The Court recommends dismissing Hicks's and Martin's Fourteenth Amendment Due Process clause fabricated evidence claim *without prejudice* and *with leave to amend* because both Complaints are too vague as to this claim.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (cleaned up). "In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must plausibly allege "that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016).

Both Hicks and Martin failed to plausibly allege a fabricated evidence claim. As to Hicks, he pleaded that he was speeding. *See*

(Hicks Complaint, Dkt. 1, pg. 1, at ¶2). So the speeding ticket was not fabricated. In consequence, Hicks cannot plausibly allege the second element of a fabricated evidence claim. Adding on to this, Hicks has not alleged that he has suffered a constitutional deprivation. Plainly, Hicks's allegations are too sparse to allow him to proceed with this claim.

Likewise, Martin's fabrication claim is also too vague to pass § 1915's forgiving review. Martin claims that Defendants fabricated "official documents[.]" (Martin Complaint, Dkt. 1, pg., 3, at ¶28). That is all she writes about this claim. Again, that is not enough to survive Rule 8's and *Iqbal*'s, pleading requirements. *See Ashcroft*, 556 U.S. at 678.

## G. The District Court should reject Martin's New York Civil Rights Law §79-n claim.

Martin failed to plausibly allege that §79-n applies here. That statute prevents individuals from harassing or calling police officers on other persons, based on statutorily protected classifications, when the individual who harasses or calls the police has no reason to suspect a violation of New York's criminal law. *See* N.Y.C.R.L. §79-n. Assuming this law applied to police officers, Martin has neither plausibly alleged

Trooper #5640 violated N.Y. Penal Law §240.25 nor Trooper #5640's
conduct occurred because Martin falls into a statutorily protected
classification. Without those prerequisites, Martin's Complaint fails to
plausibly allege a violation of §79-n. Because that is true, this Court
recommends the District Court dismiss this claim *without prejudice* and
*with leave to amend.*

## H. The District Court should allow Hicks and Martin to amend their complaints.

Generally, before courts dismiss a pro se complaint or any part of the
complaint on its own, they should afford the plaintiff the opportunity to
amend at least once; but leave to re-plead may be denied where any
amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d
129, 131 (2d Cir. 1993). Futility is present when the problem with a
plaintiff's causes of action is substantive such that better pleading will
not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)
(citation omitted). Here, there is no futility because Hicks and Martin
can possibly amend their respective Complaints to include facts that
facially allege a claim. Thus, the Court recommends finding no futility.

## V. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that Hicks's motion to proceed *IFP* (25-CV-1598, Dkt. 2) and Martin's motion to proceed *IFP* (25-CV-1599, Dkt. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that the District Court should **CONSOLIDATE** Hicks's (25-CV-1598) and Martin's (25-CV-1599) Complaints, and it is further

**RECOMMENDED**, that Hicks's Fourth Amendment illegal seizure claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Martin's Fourth Amendment illegal seizure claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Hicks's Fourth Amendment illegal search claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Martin's Fourth Amendment illegal search claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Hicks's First Amendment retaliation claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Martin's First Amendment retaliation claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Hicks's *Monell* claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Hicks's Fourteenth Amendment Due Process clause fabrication of evidence claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that Martin's Fourteenth Amendment Due Process clause fabrication of evidence claim should be **DISMISSED**

**WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Martin's New York State law claims should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail. The Clerk shall also provide the plaintiffs with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 12th, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge



KeyCite Yellow Flag

Called into Doubt by  Parker v. Blackerby,   W.D.N.Y.,   March 26, 2019

732 Fed.Appx. 18

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY
ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE
OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY
ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Alexander CARAVALHO, Sergio Castillo, Daniel Greenspan,

Joseph Sharkey, Easton Smith, Jennifer Waller, Plaintiffs-Appellants,

Eric Carter, Austin Guest, Thomas Hintze, Plaintiffs,

v.

CITY OF NEW YORK, New York City Police Department, Officer Li, Ahmed, NYPD Officer Abdel-Rahim, Rodriguez,
NYPD Officers John Does, 1-15, the names being fictitious, as the true names and shield numbers are not presently
known, in their individual and official capacities, NYPD Officers Jane Does, 1-15, the names being fictitious, as the
true names and shield numbers are not presently known, in their individual and official capacities, NYPD Department
Chief Joseph Esposito, Nicole Papamichael, Department Inspector Edward Winski, Lieutenant Frank Viviano, Officer
Grantley Bovell, Shield No. 11743, Officer Jabded Ahmed, Shield No. 19415, Officer Alexis Rodriguez, Shield
No. 28722, Officer Cheung Li, Shield No. 5474, Officer Michael Galgano, Shield No. 2671, Defendants-Appellees.

17-1944-cv

|

April 25, 2018

**Synopsis**

**Background:** Protesters brought action against city and police officers, alleging under § 1983 that they were falsely arrested
and unlawfully detained, and that defendants violated their First Amendment and due process rights. The United States District
Court for the Southern District of New York, Castel, J., 2016 WL 1274575, granted in part and denied in part defendants'
motion for summary judgment. The District Court, Castel, J., 2016 WL 4154273, denied protesters' motion for reconsideration.
Protesters appealed.

**Holdings:** The Court of Appeals held that:

[1] officers had probable cause to arrest protestors for disorderly conduct, thus precluding false arrest and First Amendment
retaliation claims;

[2] decision to temporarily close privately-owned public park for protestors' violation of park rules was permissible time, place,
and manner restriction under First Amendment;

[3] detention of protesters for 24 to 30 hours was not excessive; and

[4] protesters could not maintain claim for denial of their fair trial rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion for Reconsideration.

West Headnotes (4)

**[1]**    **Civil Rights**  ⚖  Arrest and detention

**Constitutional Law**  ⚖  Protests and Demonstrations in General

**Search, Seizure, and Arrest**  ⚖  Disorderly conduct and breach of the peace

Police officers had probable cause to arrest protestors, who had gathered in privately-owned public park, for disorderly conduct, under New York law, thus precluding their § 1983 false arrest and First Amendment retaliation claims; officers made several announcements ordering protestors to disperse, and officers observed protesters locking their arms and legs together, sitting on ground, and refusing to leave. U.S. Const. Amends. 1, 4; 42 U.S.C.A. § 1983; N.Y. Penal Law § 240.20(6).

19 Cases that cite this headnote

**[2]**    **Constitutional Law**  ⚖  Protests and Demonstrations in General

**Municipal, County, and Local Government**  ⚖  Prevention of improper use or obstruction

Police officers' decision to temporarily close privately-owned public park for protestors' violation of park rules was permissible time, place, and manner restriction under First Amendment; government had substantial interest in ensuring that its public spaces were safe and clean, and temporarily clearing park on day in question, as tents and tarps were being erected, with hundreds of protesters in attendance, was narrowly tailored means of achieving that interest, and protesters were free to exercise their First Amendment rights in other public fora in vicinity or return to park after it was cleaned. U.S. Const. Amend. 1.

3 Cases that cite this headnote

**[3]**    **Search, Seizure, and Arrest**  ⚖  Particular cases

Police officers' detention of protesters for 24 to 30 hours was not excessive, as would support protesters' § 1983 excessive detention claim under Fourth Amendment; although protesters contended that there was no justification to detain them once they were separated from their arresting officers, they failed to demonstrate that their release was unreasonably delayed because of ill will, delay for delay's sake, or officers' attempts to gather additional evidence to justify their arrests, rather than because of practical realities of transporting busloads of arrestees and processing their arrests. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**[4]**    **Criminal Law**  ⚖  Wrongful act or conduct of person injured

Protesters failed to demonstrate that they were detained as result of allegedly fabricated arrest paperwork by city police officers, rather than their arrest for disorderly conduct, thus precluding protesters' § 1983 claim for denial of their Sixth Amendment right to fair trial based on fabricated information. U.S. Const. Amend. 6; 42 U.S.C.A. § 1983.

13 Cases that cite this headnote

**\*20**  Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED.**

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: GIDEON O. OLIVER, New York, New York.

FOR DEFENDANTS-APPELLEES: JOHN MOORE, Assistant Corporation Counsel (Richard Dearing, Deborah A. Brenner, Assistant Corporation Counsels, on the brief ), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

PRESENT: RICHARD C. WESLEY, DENNY CHIN, Circuit Judges, JESSE M. FURMAN, Judge. [*]

## **\*19  SUMMARY ORDER**

Plaintiffs-appellants, six individuals who were arrested on March 17, 2012 after refusing to disperse from an Occupy Wall Street protest in Zuccotti Park, appeal the district court's orders dismissing their 42 U.S.C. § 1983 claims in favor of defendants-appellees, employees of the New York City Police Department (the "NYPD") and the City of New York (the "City"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The following facts are construed in the light most favorable to plaintiffs. Alexander Carvalho, Sergio Castillo, Daniel Greenspan, Joseph Sharkey, Easton Smith, and Jennifer Waller were among hundreds of protesters celebrating the six-month anniversary of the Occupy Wall Street movement in Zuccotti Park on March 17, 2012. Zuccotti Park is a privately owned public space which is governed by park rules established and enforced by its owner and operator, Brookfield Office Properties ("Brookfield"). On that day, two NYPD officials—Chief of Department Esposito and Deputy Inspector Winski—observed **\*21** protesters setting up tents and tarps, lying down, and climbing on fences and shrubs. This behavior violated posted park rules, and a Brookfield representative announced that the park was being closed for cleaning and that people were required to leave in order that the park be cleaned. Plaintiffs ignored the instructions.

After the decision was made to clear the park, Winski and Lieutenant Viviano made several announcements with bullhorns ordering protesters to disperse, but not all plaintiffs heard the announcements. Plaintiffs did not leave and, except for Castillo, locked arms and legs with other protesters to form human walls. After further warnings, the police arrested those protestors who refused to leave, including plaintiffs, and transported them on buses to police precincts and later Central Booking. Because plaintiffs and other arrestees were separated from their arresting officers during transport, other officers were designated as arresting officers and completed the arrest processing paperwork. Plaintiffs were held in custody for 24 to 30 hours. They were released without charges because their designated arresting officers could not personally attest to their criminal conduct.

On June 17, 2013, plaintiffs sued the City and certain NYPD officers for violations of their First, Fourth, Sixth, and Fourteenth Amendment rights. The district court granted summary judgment in part for defendants pursuant to a March 31, 2016 memorandum and order, dismissing all plaintiffs' claims at issue in this appeal. The court denied plaintiffs' motion for reconsideration on July 29, 2016, and—following the settlement of remaining issues unrelated to this appeal—issued orders

closing the case on December 21, 2016 and again on March 21, 2017. [1] Plaintiffs appealed on June 16, 2017. On appeal, plaintiffs challenge the district court's dismissal of their false arrest, First Amendment, excessive detention, and fair trial rights claims. [2]

We review *de novo* the district court's summary judgment ruling, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the **\*22** movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a) ). Upon review, we conclude that the district court properly granted summary judgment to defendants on plaintiffs' claims.

## I. False Arrest

A claim for false arrest under Section 1983 and New York law requires a plaintiff to demonstrate that "the defendant intentionally confined him without his consent and without justification." *Dufort v. City of N.Y.*, 874 F.3d 338, 347 (2d Cir. 2017) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest...." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). "Probable cause exists when 'the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.' " *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Marcavage v. City of N.Y.*, 689 F.3d 98, 109 (2d Cir. 2012) ). To determine whether probable cause exists, "we look at the facts as the officers knew them in light of the specific elements" of the offense, *Gonzalez*, 728 F.3d at 155, considering the totality of the circumstances and "the perspective of a reasonable police officer in light of his training and experience," *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).

The offense of disorderly conduct under N.Y. Penal Law § 240.20(6) consists of the following elements: "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." *Kass*, 864 F.3d at 211 (citing N.Y. Penal Law § 240.20(6) ). [3] Under the second element, refusal to obey an order is justified "only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *Id.* at 212 (quoting *People v. Todaro*, 26 N.Y.2d 325, 328-29, 310 N.Y.S.2d 303, 258 N.E.2d 711 (1970) ).

 **[1]**  On this record, a reasonable jury could only conclude that the NYPD officers had probable cause to arrest plaintiffs for disorderly conduct under N.Y. Penal Law § 240.20(6). Plaintiffs do not contest that officers made several announcements ordering protesters to disperse, and that officers observed protesters locking their arms and legs together, sitting on the ground, and refusing to leave. Although some plaintiffs did not hear the officers' orders to disperse, in assessing probable cause "we look at the facts as the officers knew them," *Gonzalez*, 728 F.3d at 155, and it was objectively reasonable for the officers—who gave multiple dispersal orders and warned protestors before arresting them—to conclude that plaintiffs refused to comply with a lawful order to disperse in violation of N.Y. Penal Law § 240.20(6). And while plaintiffs contend that the orders to disperse were not lawful, on these facts no reasonable jury could conclude that the orders were "purely arbitrary." *Kass*, 864 F.3d at 212 (quoting **\*23** *Todaro*, 26 N.Y.2d at 329, 310 N.Y.S.2d 303, 258 N.E.2d 711).

## II. First Amendment

### A. Retaliation

The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive. *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). Because we conclude that plaintiffs' arrests were supported by probable cause, their First Amendment retaliation claims are without merit.

**B. Decision to Temporarily Clear Zuccotti Park**

In public fora, "the government may apply content-neutral time, place, and manner restrictions only if they are 'narrowly tailored to serve a significant government interest' and if 'ample alternative channels of communication' are available." *Kass*, 864 F.3d at 208 (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (per curiam) ). A restriction is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and it is "not substantially broader than necessary to achieve the government's interest." *Marcavage*, 689 F.3d at 106 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ). But a narrowly tailored restriction need not be the "least restrictive or least intrusive means" of serving the government's interest, *id.* (quoting *Ward*, 491 U.S. at 798, 109 S.Ct. 2746), and the "requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs" by the restriction, *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 101 (2d Cir. 2006).

 **[2]**    Assuming, without deciding, that the First Amendment applies to Zuccotti Park, we conclude as a matter of law that defendants' decision to temporarily close Zuccotti Park for park rules violations was a constitutional time, place, and manner restriction. The government has a substantial interest in ensuring that its public spaces are safe and clean, *see Marcavage*, 689 F.3d at 104, and temporarily clearing the park on the day in question—as tents and traps were being erected, with hundreds of protesters in attendance—was a narrowly tailored means of achieving that interest. [4]  Although the officers could conceivably have closed portions of the park instead, the First Amendment does not require the "least restrictive or least intrusive means." *Id.* at 106 (quoting *Ward*, 491 U.S. at 798, 109 S.Ct. 2746). Moreover, plaintiffs remained free to exercise their First Amendment rights in other public fora in the vicinity or to return to Zuccotti Park after it was cleaned.

## III. Excessive Detention

A claim for excessive detention is governed by the Fourth Amendment, which "requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention" following a warrantless arrest. *Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005). Under the Supreme Court's precedent, "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement...." *Id.* at 137 (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ). An arrestee can rebut the presumption of constitutionality by showing that the probable  ***24***  cause determination was "delayed unreasonably," such as "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661.

 **[3]**    We conclude that no reasonable jury could find that the detention of plaintiffs for 24 to 30 hours, in the circumstances here, was excessive. Their detention of less than 48 hours was presumptively reasonable. *See Bryant*, 404 F.3d at 137. Although plaintiffs contend that there was no justification to detain them once they were separated from their arresting officers, plaintiffs have not put forth any evidence to show that their release was unreasonably delayed because of "ill will," "delay for delay's sake," or officers' attempts to gather additional evidence to justify their arrests, rather than because of the "practical realities" of transporting busloads of arrestees and processing their arrests. *McLaughlin*, 500 U.S. at 56-57, 111 S.Ct. 1661. Nor are we persuaded by plaintiffs' reliance on New York law, because "the Fourth Amendment does not incorporate state procedural criminal law." *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (emphasis omitted).

## IV. Fair Trial Rights

To prevail on a claim for denial of the constitutional right to a fair trial based on fabricated information, a plaintiff must demonstrate that "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

 **[4]**  Assuming, without deciding, that a plaintiff who was never charged with an offense can state a claim for the denial of his or her constitutional right to a fair trial, we reject plaintiffs' claims on the merits. Plaintiffs failed to adduce any evidence demonstrating that they were detained as a result of the allegedly fabricated arrest paperwork, rather than their arrest for disorderly conduct. *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (plaintiff cannot state a claim for a liberty deprivation attributable to an arrest supported by probable cause, unless "the fabricated evidence causes some 'further deprivation' " (quoting *Garnett*, 838 F.3d at 277) ).

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.


**All Citations**

732 Fed.Appx. 18


---

### Footnotes

*    Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

1    After the only surviving claims, those of plaintiff Austin Guest, were settled, the district court entered the two orders —on December 21, 2016 and on March 21, 2017. Both apparently resolved only Guest's claims and purported to close the case. The March 21, 2017 order was entered because Guest and defendants had not in fact finalized the settlement after the December 21, 2016 order.

     When it closed the case, however, the district court did not enter a separate judgment implementing its summary judgment decision, as required by Federal Rule of Civil Procedure 58(a). *See* Fed. R. Civ. P. 58(a) ("[e]very judgment and amended judgment must be set out in a separate document," subject to certain exceptions inapplicable in this case). But plaintiffs could not have appealed in any event until all the claims, including Guest's, were resolved. *See* Fed. R. Civ. P. 54(b). Therefore, we deem plaintiffs' time to appeal to run from 30 days after the district court's March 21, 2017 order was deemed "entered," which was 150 days after entry in the civil docket on March 21, 2017. *See* Fed. R. App. P. 4(a)(7)(A)(ii) (for purposes of Rule 4(a), a judgment or order is "entered" when "the judgment or order is set forth on a separate document, or 150 days have run from entry of the judgment or order in the civil docket," whichever comes first). The June 16, 2017 notice of appeal was filed within 180 days of the March 21, 2017 order. Hence, the appeal is timely.

2    Plaintiffs do not challenge the district court's dismissal of their excessive force, equal protection, due process, state law, and municipal liability claims.

3    The relevant text of the statute reads: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: ... He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse...." N.Y. Penal Law § 240.20(6).

4    Zuccotti Park encompasses about one rectangular block of open space, bounded by Broadway, Cedar Street, Church Street, and Liberty Street.

---

**End of Document**                                               © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

>    There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

  (1) a short and plain statement of the grounds for the court's jurisdiction ...;

  (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

  (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

  [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5**  As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)).[9]

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5 Plaintiff did not provide any transcripts.

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7 The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Distinguished by Thompson-Allen v. Library, D.Conn., August 14, 2024

2014 WL 1318356
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert LEDERMAN, Plaintiff,

v.

Adrian BENEPE (in his Individual and Official Capacity as the Commissioner of the
New York City Department of Parks and Recreation); Sarah Henry (in her Individual and
Official Capacity); Museum of the City of New York; and City of New York, Defendants.

No. 12 Civ. 6028(PGG).
|
Signed March 28, 2014.

*MEMORANDUM OPINION & ORDER*

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Robert Lederman brings this Section 1983 action against the City of New York and former New York City Parks and Recreation Commissioner Adrian Benepe (together, the "City Defendants"), and Dr. Sarah Henry and the Museum of the City of New York, Inc. ("MCNY," and together with Dr. Henry, the "Museum Defendants"). Lederman alleges that Defendants violated his First, Fourth, and Fourteenth Amendment rights by threatening and causing his arrest during an August 9, 2011 MCNY panel discussion. Lederman also asserts that Defendants' actions constitute retaliation for his protest activities and past political activism.

All defendants have moved to dismiss the Amended Complaint for failure to state a claim. The Museum Defendants have also moved to dismiss for insufficient service of process. For the reasons stated below, the motions will be granted in part, and denied in part.

*BACKGROUND*

**I.** *FACTS*

For purposes of deciding Defendants' motions to dismiss, the Court assumes the following factual allegations in the Amended Complaint to be true. Plaintiff is a visual artist and well-known political activist, and is the president and founder of A.R.T.I.S.T. (Artists' Resistance to Illegal State Tactics). (Amended Complaint ("Am.Cmplt") ¶ 8) Plaintiff has previously filed lawsuits challenging government regulations on First Amendment grounds, including a suit against, *inter alia,* the City and Benepe. [1] (*Id.* at ¶¶ 1, 8) In connection with his protest activities, Plaintiff has been arrested forty-four times. (*Id.* ¶ 8)

On August 9, 2011, Plaintiff attended a panel discussion at the MCNY entitled "Whose Park Is It? Financing and Administering New York's New Parks." (*Id.* ¶ 13) Benepe, who was Parks Commissioner at the time, appeared as a panelist. (*Id.* ¶ 11) The MCNY is a private, non-profit organization that operates on City property and receives funding from the City. (*Id.* ¶ 11) Plaintiff purchased a ticket for the event that entitled him to admission and a reserved seat. (*Id.* ¶ 15)

Soon after the panel discussion began, Plaintiff stood up, displayed a sign, and stated that he was making a "public service announcement." (*Id.* ¶ 16) Plaintiff's sign read: "Park privatization is a real estate scam. It's all about raising property values for the Mayor's wealthiest friends." (*Id.* ¶ 16 n. 4) While displaying his sign, Plaintiff interrupted the panel discussion to tell "the audience that Benepe had long prosecuted street artists[,]" that he was "lying," and that Benepe was a "criminal who steals our park land to sell to the highest bidder." (*Id.* ¶ 17)

Several of those present stood up to confront Plaintiff, including other audience members and an MCNY security guard and "administrator," who asked Plaintiff to put down his sign. (*Id.* ¶¶ 20, 27, 28) Other audience members holding signs had not been asked to put down their signs. (*Id.* ¶ 28) A New York City Police Department ("NYPD") officer who was called to the scene invited Plaintiff to leave, but Plaintiff declined. (*Id.* ¶ 21) Plaintiff was permitted to remain and to display his sign, so long as he did so quietly and to the side of the stage. (*Id.* ¶ 22) Plaintiff continued to interrupt the event, however, by making "comments" in response to Benepe's remarks. (*Id.*)

**\*2** Approximately thirty minutes later, during a question and answer session, Plaintiff again interrupted the program by interjecting his own "comment[ ]" while an audience member was attempting to ask a question about Brooklyn Bridge Park. (*Id.* ¶ 23) Benepe told Plaintiff to "shut up," and asked Plaintiff whether he wanted to be arrested. Plaintiff replied, "You've done it many times before." (*Id.* ¶¶ 23–24) About five minutes later, police returned to the scene and took Plaintiff into custody. (*Id.* ¶ 24) As he was being taken away, Plaintiff yelled, "Arrest Adrian Benepe!" and "Bloomberg Sucks!" (*Id.* ¶ 29) No other audience members-including individuals who allegedly "physically accosted" Plaintiffwere arrested. (*Id.* ¶¶ 27, 60)

The police charged Plaintiff with trespassing and disorderly conduct. (*Id.* ¶ 26) According to Plaintiff, the "accusing instrument" demonstrates that Defendant Henry, a museum supervisor, made several false statements to police, including that (1) she "observed the defendant scream and yell in sum and substance: Bloomberg is a Liar, Bloomberg Sucks, Fuck Bloomberg;" (2) Plaintiff was not authorized to be at the event, (3) Henry had asked Plaintiff to leave and he refused; and (4) Plaintiff did not have permission or authority to remain at the MCNY. (*Id.* ¶ 29) On November 3, 2011, the charges against Plaintiff were dismissed on speedy trial grounds. (Anthony M. Disenso Declaration ("Disenso Decl."), Ex. C ("Certificate of Disposition"); Lambrina Mathews Declaration ("Mathews DecL"), Ex. A (*"People v. Lederman,* Criminal Case File")

## II. *PLAINTIFF'S CLAIMS*

Plaintiff accuses Defendants of acting under color of state law to deprive him of his constitutional rights. The Amended Complaint asserts seven causes of action: (1) a First Amendment retaliation claim against Benepe for "threaten [ing] to have Plaintiff" arrested; (2) a First Amendment retaliation claim against the City for engaging in a practice, policy and custom of "harassing artists and others engaged in First Amendment activity" and "targeting Plaintiff ... as the outspoken leader of their group"; (3) a First Amendment retaliation claim against Dr. Henry for "endorsing Benepe's threat to have [Plaintiff] arrested" and for providing "false statements" to police; (4) a Fourth Amendment claim for false arrest against Benepe, the City, and the Museum Defendants; (5) a Fourteenth Amendment Equal Protection claim against the City Defendants; (6) a state law false arrest claim against Dr. Henry; and (7) a "respondeat superior" claim against the MCNY. (Am.Cmplt.¶¶ 48–81)

## DISCUSSION

## I. *THE MUSEUM DEFENDANTS' MOTION TO DISMISS FOR IMPROPER SERVICE*

The Museum Defendants have moved to dismiss this action for improper service under Fed.R.Civ.P. 12(b)(5). This issue must be addressed before considering the Museum Defendants' motion to dismiss for failure to state a claim. *See Mende v. Milestone Tech ., Inc.,* 269 F.Supp.2d 246, 251 (S.D.N.Y.2003) ( "Before addressing Defendants' Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction.") (citing *Arrowsmith v. United Press*

*Int'l* 320 F.2d 219, 221 (2d Cir.1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant-a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

###### A. *Legal Standard*

**\*3** Under Fed.R.Civ.P. 4(c)(1), a "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)," which is no later than 120 days after the filing of the Complaint. Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Fed.R.Civ.P. 4(e) provides that an individual may be served by

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Under New York law, personal service on an individual may be accomplished by "delivering the summons within the state to the person to be served," or "by delivering the summons within the state to a person of suitable age and discretion at the ... usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the [person's] actual place of business...." N.Y. C.P.L.R. § 308(l)-(2).

Under New York law, personal service on a not-for-profit corporation such as the Museum [2] is governed by N.Y. C.P.L.R. § 311, which provides that service must be made on "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).

" '[I]n considering a motion to dismiss pursuant to [Rule] 12(b) (5) for insufficiency [of service] of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.' " *Koulkina v. City of New York,* 559 F.Supp.2d 300, 311 (S.D.N.Y.2008) (quoting *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F.Supp.2d 382, 387 (S.D.N.Y.2002)). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.' " *Id.* (quoting Mende, 269 F.Supp.2d at 251). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." *Howard v. Klvnveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997), *affd,* 173 F.3d 844 (2d Cir.1999). A plaintiff must instead, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." *Kwon v. Yun,* No. 05–CV–1142, 2006 WL 416375, at \*2 (S.D.N.Y. Feb. 21, 2006).

**\*4** "If service of process [is] not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory." *Darden,* 191 F.Supp.2d at 387. "For example, courts may grant a defendant's motion to dismiss pursuant to Rule 12(b)(5) and may simultaneously grant a plaintiff leave to properly serve that defendant." *Stone v. Ranbaxy Pharm., Inc.,* JFM–10–CV– 08816, 2011 WL 2462654, at \*6 (S.D.N.Y. June 16, 2011).

A court may also extend a plaintiff's time for service upon a showing of good cause. Fed.R.Civ.P. 4(m). "[A] mistaken belief that service was proper does not constitute good cause." *Jonas v. Citibank, N.A.,* 414 F.Supp.2d 411, 416 (S.D.N.Y.2006). Similarly, "[a]n attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." *Howard,* 977 F.Supp. at 658 (citing *McGregor v. United States,* 933 F.2d 156, 160 (2d Cir.1991)).

"Even in the absence of good cause, however, the court has discretion to extend the time for service of the complaint." *Songhorian v. Lee,* 11 CIV. 36 CM, 2012 WL 6043283, at \*4 (S.D.N.Y. Dec.3, 2012) (citing *Zapata v. City of New York,* 502 F.3d 192, 193 (2d Cir.2007) ("We join several other circuits and hold that district courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause.")). "When deciding whether to exercise discretion and extend the time for service of process, courts consider: '(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.' " *Id.* (quoting *Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 506 (S.D.N.Y.1999)).

In determining whether the Museum Defendants have been properly served, this Court has looked to materials outside the pleadings, including (1) affidavits from Dr. Henry and museum employees Susan Henshaw Jones and Colleen Blackler (Dkt.Nos.26–28); (2) affidavits and a declaration from process servers concerning service of the Complaint and Amended Complaint on the Museum Defendants (Affidavit of Roschaad–Jamal Milner ("Milner Aff") (Dkt. No. 8); Affidavit of Laquesia Ivory ("Ivory Aff.") (Dkt. No. 21–4); Declaration of Roschaad–Jamal Milner ("Milner Decl.") (Dkt. No. 21–5)); and (3) mail receipts (Dkt. No. 21–2).

### B. *Analysis*

#### 1. *Service of the Initial Complaint on the Museum Defendants*

The Museum Defendants argue that they were never properly served with the initial complaint. Plaintiff has provided a confusing and shifting account of how service was allegedly made on these defendants.

Plaintiff's process server-Roschaad—Jamal Milner—submitted an affidavit stating that he served "Sarah David" and the MCNY on November 29, 2012, by leaving "one summons and one verified complaint each" with a secretary at the Museum. [3] (Milner Aff. (Dkt. No. 8) at ¶¶ 2–3) After the Museum Defendants submitted a pre-motion letter to the Court asserting that only one copy of these documents had been left at the MCNY-and that that copy was left with an MCNY security guard and not with a secretary (*see* Museum Def. Jan. 11, 2013 Ltr.) Plaintiff's counsel offered a different account. In January 13, 2013 letter, Plaintiff's counsel stated that "[t]he process server attests that the security guard at the museum refused to allow him to personally deliver copies of the service to Ms. Henry, but promised to give the process to her personally." (Pltf. Jan. 13, 2013 Ltr. at 2) Plaintiff now proffers a third version of events. In a July 5, 2013 declaration, Plaintiff's process server—Mr. Milner—no longer claims that he gave the papers to a secretary or spoke with a security guard. Instead, Milner claims that a "young Caucasian lady at the front desk" informed him that he could not see Dr. Henry without an appointment, but that she would give the "important business documents" to Dr. Henry's secretary—"Sarah David"—and that Ms. David would then give the papers to Dr. Henry. (Milner Decl. (Dkt. No. 21–5) ¶¶ 2–3) The Court need not decide whether any of these accounts are true, because service would not be appropriate—as to either Dr. Henry or the Museum—under any of these scenarios.

**\*5** In New York, it is well-settled that delivery of process "outside the presence of the person to be served does not conform with the requirements of [N.Y. C.P.L.R. § 308(1) ] with respect to personal service." *Hoffman v. Petrizzi,* 144 A.D.2d 437, 438, 534 N.Y.S.2d 11 (2d Dep't 1988) (quoting *Selby v. Jewish Mem. Hosp.,* 130 A.D.2d 651, 652, 515 N.Y.S.2d 580 (2d Dep't 1987); *see also Macchia v. Russo,* 67 N.Y.2d 592, 593, 505 N.Y.S.2d 591, 496 N.E.2d 680 (1986) (noting that the Court of Appeals has "refused to recognize delivery of process to another person as constituting personal delivery to defendant"). Accordingly, personal service of the initial complaint was not made on Dr. Henry.

Plaintiff attempts to avoid this result by arguing that Dr. Henry resisted service. (Pltf.Opp.Br.(Dkt. No. 22) at 18) Under New York law, "delivery of a summons may be accomplished by leaving it in the 'general vicinity' of a person to be served" if that person " 'resists' service." " *Spector v. Berman,* 119 A.D.2d 565, 566, 500 N.Y.S.2d 735 (2d Dep't 1986). This exception to the rule is not applicable here, however. Even where a party actively resists service, "a process server ... must bring 'the questioned process within the purview of the person to be served,' since '[t]he defendant must be made aware that he or she is in fact being served with process.' " *Davis v. Musler,* 713 F.2d 907, 914 (2d Cir.1983) (internal citation omitted) (quoting *Haak v. Town of Wheatland,* 86 A.D.2d 961, 962, 448 N.Y.S.2d 305 (4th Dep't 1982)). There is no evidence here that Dr. Henry was aware that the process server was attempting to effect service on her, much less that she was actively resisting service. [4]

Even accepting Plaintiff's most recent account of the attempt to effect service, a third party's refusal to permit a process server to access a defendant's office does not demonstrate that a defendant was "resisting service." *See, e.g., TAGC Mgmt., LLC v. Lehman,* 842 F.Supp.2d 575, 580 (S.D.N.Y.2012) (service deficient when delivered to security guard in office lobby even though security guard had "refused to allow the process server access to [defendant's office suite]"); *Ingenito v. Riri USA, Inc.,* No. 11 CV 2569(CBA), 2011 WL 4056078, at \*4 (S.D.N.Y. Aug.9, 2011) (service deficient even though process server had been denied access to defendant's office by security guard).

Plaintiff also failed to properly serve the initial complaint on the MCNY. Plaintiff's argument that the Museum was properly served is premised on the notion that Dr. Henry, a corporate officer of the museum, was properly served. (Pltf.Opp.Br.(Dkt. No. 22) at 19) As explained above, Dr. Henry was not properly served. [5]

Finally, both Dr. Henry and the MCNY have submitted affidavits demonstrating that they have never authorized anyone to accept service on their behalf. (Affidavit of Dr. Sarah Henry ("Henry Aff .") (Dkt. No. 27) ¶ 4; Affidavit of Susan Henshaw Jones ("Jones Aff.") ¶ 2 (Dkt. No. 26)) By his own admission, plaintiff's initiating process server never inquired whether the receptionist was authorized to accept service on behalf of Dr. Henry or the MCNY. (Milner Decl. (Dkt. No. 21–5) Accordingly, this Court concludes that Plaintiff did not effect service of the initial complaint on the Museum Defendants.

### 2. *Service of the Amended Complaint on the Museum Defendants*

**\*6** Plaintiff has submitted an affidavit from another process server-Laquesia Ivory—in which Ms. Ivory claims that she delivered two copies of the Amended Complaint to an MCNY employee named Colleen Blackler, who represented that she was authorized to accept service on behalf of both Dr. Henry and the MCNY. (Ivory Aff. (Dkt. No. 21–4) ¶¶ 7–9) The Museum Defendants deny that Ms. Blackler-an executive assistant-was authorized to accept service for Dr. Henry or the Museum, and also deny that Ms. Blackler told Ms. Ivory that she was authorized to accept service. *See* Affidavit of Colleen Blackler ("Blackler Aff.") (Dkt. No. 28) ¶ 5; Museum Def. Br. (Dkt. No. 24) at 23).

Ordinarily, a hearing would be necessary to resolve the factual dispute. Here, however, it is undisputed that Plaintiff's process server did not give Ms. Bladder copies of the summons when she handed her copies of the Amended Complaint. *See* Ivory Aff. (Dkt. No. 21–4) ¶¶ 7, 9; Bladder Aff. (Dkt. No. 28) ¶¶ 7, 9. "Service of process in the federal system requires service of a summons, in the manner prescribed in Rule 4, together with a copy of the complaint." *OS Recovery, Inc. v. One Groupe Int'l, Inc.,* 02 CIV 8993(LAK), 2005 WL 1744986, at \*1 (S.D.N.Y. July 26, 2005).

Because Plaintiff did not properly serve the summons and original complaint on the Museum Defendants, and because Plaintiff concededly did not serve the summons associated with the Amended Complaint on the Museum Defendants, proper service has not been effected on the Museum Defendants. *See, e.g., LeBrew v. Reich,* 03–CV–1832 (JG) (KAM), 2006 WL 1662595, at *6 (E.D.N.Y. May 12, 2006) (dismissing third-party complaint where plaintiff failed to include summons with copy of complaint mailed to defendant); *OS Recovery, Inc.,* 2005 WL 1744 986, at * 1 (denying default judgment against defendants who were not served with summons); *see also Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir.1978) (noting that "Rule 4 mandates that the defendant be served with the summons and complaint personally, or in accordance with one of several prescribed alternatives" and that "[a] showing that the defendant has had actual notice of the lawsuit is not sufficient"). Accordingly, this Court lacks personal jurisdiction over the Museum Defendants and must either dismiss the Amended Complaint as to them or extend the period for service. *See Omni Capital Int'l, Ltd. v. Rudolf Wolf & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

### 3. *Extension of Time to Effect Service*

As discussed above, under the circumstances here, this Court has discretion to grant Plaintiff additional time to effect service. In deciding whether an extension of time should be granted, courts consider: "(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Eastern Refractories Co.,* 187 F.R.D. at 506.

**\*7** Here, the relevant considerations weigh in Plaintiff's favor. Defendants acknowledge receiving copies of the Amended Complaint, and thus they had actual notice of the claims contained therein. Defendants do not claim that they would be unfairly prejudiced by an extension. *See Jordan v. Forfeiture Support Associates,* 928 F.Supp.2d 588, 599 (E.D.N.Y.2013) ("Although defendant 'will be burdened with the obligation to defend this lawsuit if the extension is granted, ... that does not rise to the level of prejudice necessary to tip the balance of this factor in [defendant's] favor.' " (quoting *Lumbermens Mut. Cas. Co. v. Dinow,* No. 06–CV–3881, 2009 WL 2424198, at *4 (E.D.N.Y. Aug.6, 2009)). Although the Museum Defendants did not conceal the defect in service, and even though Plaintiff has not argued that his claims would be time-barred if his claims were dismissed, given the lack of prejudice to the Museum Defendants and their actual notice of the pending action, this Court concludes that an extension is warranted. Accordingly, Plaintiff will be granted thirty days from the date of this order to effect service on the Museum Defendants. The Museum Defendant's motion to dismiss pursuant to Rule 12(b)(5) is therefore denied, with leave to renew if service is not effected in thirty days.

### II. *DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM*

All Defendants have moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Because, at present, this Court lacks personal jurisdiction over the Museum Defendants, only the City Defendants' Rule 12(b)(6) motion will be considered.

### A. *Legal Standard*

A Rule 12(b)(6) motion is directed to a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct." *Id.* at 679. "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint," *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 87 (2d Cir.2002)), and must "draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir.2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s] devoid of 'further factual enhancement,' " *Iqbal,* 556 U.S. at 678 (alteration in original) (quoting *Twombly,* 550 U .S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast Inc.,* 507 F.3d 117, 121 (2d Cir.2007) (citing *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929).

**B. *Documents Considered on a Motion to Dismiss***

**\*8**  In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with [a regulatory authority such as the SEC], and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (internal citations omitted). "When matters ... that do not fall into these limited categories are [submitted in connection with] a Rule 12(b)(6) motion, 'a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment ... and afford all parties the opportunity to present supporting material.' " *Peterec v. Hilliard,* 12–CV–3944 CS, 2013 WL 5178328, at \*2 (S.D.N.Y. Sept.16, 2013) (quoting *Friedl v. City of N.Y.,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks omitted)).

In their motion to dismiss papers, the City Defendants rely heavily two video recordings of the August 9, 2011 panel discussion that the Plaintiff apparently posted to his YouTube account. (City Def. Br. (Dkt. No. 19) at 6; *see* Disenso Decl., Ex. B (Dkt. No. 18)) The Amended Complaint does not reference the videos, and there is nothing in the record demonstrating that Plaintiff relied on the videos in filing this lawsuit. Plaintiff's possession of the videos does not establish reliance. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original). Moreover, it is obvious from a review of the videos that they portray only part of what happened at the August 9, 2011 event. Under these circumstances, this Court concludes that it would not be appropriate to consider the videos on a motion to dismiss. [6]

Accordingly, for purposes of this motion, this Court will not consider the videos submitted by the City Defendants. This Court will consider the certificate of disposition submitted by the City Defendants regarding Plaintiff's arrest (see Disenso Decl, Ex. C (Dkt. No. 18), because "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data." *Wims v. New York City Police Dep't.,* 10 CIV. 6128 PKC, 2011 WL 2946369, at \*2 (S.D.N.Y. July 20, 2011) (internal quotation marks and citations omitted).

**\*9**  Plaintiff has attempted to "supplement the factual record" with his own fifty-seven paragraph declaration. *See* Robert Lederman Declaration (Dkt. No. 21–6). This document may not be considered on a motion to dismiss and it will play no role in the Court's analysis . [7]

**C. *Analysis***

**1. *Plaintiff States a First Amendment Retaliation Claim Against the City Defendants***

The Amended Complaint alleges that Benepe retaliated against Plaintiff for "express[ing] an opposing viewpoint on a matter of public concern" by "threaten [ing] to have him arrested." (Am.Cmplt.¶¶ 35–38)

A private citizen alleging a First Amendment retaliation claim against a public official must show that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). "On a motion to dismiss, the court 'must be satisfied that such a claim is supported by specific and detailed

factual allegations, which are not stated in wholly conclusory terms .' " *Rankel v. Town of Somers,* 11–CV–6617 (CS), 2014 WL 715702, at * 8 (S.D.N.Y. Feb. 25, 2014) (quoting *Velez v. Levy,* 401 F.3d 75, 97 (2d Cir.2005) (internal quotation marks omitted)).

The City Defendants argue that Plaintiff's claim fails because (1) Plaintiff had no protected First Amendment interest, given that the police had probable cause to arrest him; and (2) Defendants' actions did not actually chill Plaintiff's speech. (City Def. Br. (Dkt. No. 19) at 10–11)

The Amended Complaint pleads facts demonstrating that Plaintiff was attending a "public lecture" and that he was engaged in expressive political speech. [8]   (Am.Cmplt.¶¶ 13, 16–17, 22–24, 35, 43, 49, 77) "[T]he First Amendment protects political demonstrations and protests-activities at the heart of what the Bill of Rights was designed to safeguard." *Jones v. Parmley,* 465 F.3d 46, 56 (2d Cir.2006).

Where there is probable cause to believe that a plaintiff has committed a crime, however, the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary. *See, e.g., Curley v. Suffern,* 268 F.3d at 73 ("As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken."); *see also Mozzochi v. Borden,* 959 F.2d 1174, 1179–80 (2d Cir.1992) ("[B]ecause there was probable cause in this case to believe that [plaintiff] violated the harassment statute, we will not examine the defendants' motives in reporting [plaintiff's] action to the police for prosecution.").

Plaintiff's First Amendment retaliation claim against the City Defendants is not based on his alleged false arrest, however, but rather on Benepe's alleged threat to have Plaintiff arrested. *See, e.g.,* Am. Cmplt. ¶¶ 37, 50, 52. This Court will not dismiss Plaintiff's First Amendment retaliation claim at this stage of the proceedings on the grounds that at some point after Benepe's threat, Dr. Henry provided the NYPD with information-which Plaintiff alleges to be false—that gave police officers probable cause to arrest Plaintiff.

**\*10**   The City Defendants also argue that Benepe's alleged threat "failed to chill [P]laintiffs expression." (City Def. Br. (Dkt. No. 19) at 11) "The Second Circuit has held that where a party can show no change in his behavior, he has quite plainly shown no chilling of First Amendment right to free speech." *Persaud v. McSorley,* 275 F.Supp.2d 490, 495 (S.D.N.Y.2003) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (2d Cir.1995); *Spear v. Town of W. Hartford,* 954 F.2d 63, 67 (2d Cir.1992)). If Benepe's alleged threat had no effect on Plaintiff, or emboldened rather than deterred him, then Plaintiff will not prevail on his First Amendment retaliation claim. It is a question of fact, however, whether Benepe's conduct chilled Plaintiff's expression. The Amended Complaint alleges that Plaintiff "curtailed his expression" because he feared future arrest. (Am.Cmplt.¶ 33) Accepting that allegation as true, Plaintiff has sufficiently pled a colorable First Amendment retaliation claim. The City Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim will be denied.

### 2. *Plaintiff Has Not Stated a Fourth Amendment Claim Against the City Defendants*

Plaintiff has asserted a Section 1983 false arrest claim against all Defendants. A Section 1983 false arrest claim is "substantially the same as a claim for false arrest under New York law." *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). To plead a *prima facie* false arrest claim, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994). "An arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *Biswas v. City of New York,* 12 CIV. 3607 JGK, 2013 WL 5421678, at \*4 (S.D.N.Y. Sept.30, 2013) (citing *Decker v. Campus,* 981 F.Supp. 851, 856 (S.D.N.Y.1997); *Breitbard v. Mitchell,* 390 F.Supp.2d 237, 245 (E.D.N.Y.2005)). Thus, "[u]nder New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006) (citing *Weyant,* 101 F.3d at 852).

"An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006) (quoting *Weyant,* 101 F.3d at 852). "[T]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives or belief as to the existence of probable cause." *United States v. $557,933.89. More or Less, in United States Funds,* 287 F.3d 66, 85 (2d Cir.2002).

**\*11**  The City Defendants argue that Plaintiff's Fourth Amendment claim is insufficient as a matter of law because (1) officers had probable cause to arrest Plaintiff; and (2) Plaintiff has not pled facts demonstrating Benepe's personal involvement in the arrest. The City Defendants are correct on both counts.

### (a) *The NYPD Had Probable Cause to Arrest Plaintiff*

Plaintiff was charged with trespassing and disorderly conduct. Under New York Penal Law § 240.20(4), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [w]ithout lawful authority, he disturbs any lawful assembly or meeting of persons."

The Amended Complaint alleges that Dr. Henry told police officers that she had

> observed [Plaintiff] scream and yell in sum and substance: Bloomberg is a Liar, Bloomberg Sucks, Fuck Bloomberg;" that Lederman had no lawful authority to be there; that she asked Lederman to leave and he refused; [and] that he did not have permission or authority to remain inside the Museum.

(*Id.* ¶ 29) Accepting the allegations of the Amended Complaint as true, it is abundantly clear that the NYPD had probable cause to arrest Plaintiff for disorderly conduct. The fact that Plaintiff alleges that all of Dr. Henry's statements to the police were false (*see* Pltf. Opp. Br. (Dkt. No. 22) at 5) does not change the analysis unless the officers knew that her statements were false. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley,* 268 F.3d at 69–70 (internal citations omitted). There is no such allegation in the Amended Complaint. *See Guthrie v. U.S. Gov't,* 11 CIV. 211 PKC, 2011 WL 832251, at \*3 (S.D.N.Y. Mar.2, 2011) ("Plaintiff makes no allegation that the arresting officer knew, or had reason to know, that the accusations of the complaining witness were false and therefore fails sufficiently to allege that the officer did not have probable cause to arrest him."). Accordingly, Plaintiff's false arrest claim against the City Defendants will be dismissed because police officers had probable cause to arrest him.

### (b) *The Amended Complaint Does Not Allege Dr. Benepe's Personal Involvement*

Plaintiff's false arrest claim against the City Defendants also fails because Plaintiff has not alleged facts demonstrating that Benepe was personally involved in Plaintiff's arrest.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1993). ' "[D]irect participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001).

**\*12**  Here, the sole factual allegation against Benepe in connection with Plaintiff's Fourth Amendment claim is that he threatened Plaintiff with arrest. (Am.Cmplt.¶ 23) As discussed above, however, Plaintiff alleges that it was Dr. Henry who provided the information to the police that led to his arrest. *See, e.g.,* Am. Cmplt. ¶¶ 29, 65. Because there is no allegation that

Benepe supplied information to the police or that he asked the police to arrest Plaintiff, or that he encouraged Dr. Henry to do so, there is no basis for a false arrest claim against the City Defendants.

Because the Amended Complaint does not plead Benepe's personal involvement in Plaintiff's arrest, the Fourth Amendment claim must be dismissed as to him. The Fourth Amendment claim must likewise be dismissed as against the City, because Benepe is the only municipal official charged with any wrongdoing. *See Martinez v. City of New York,* 06 CIV. 5671(WHP), 2008 WL 2566565, at * 4 (S.D.N.Y. June 27, 2008) *aff'd,* 340 F. App'x 700 (2d Cir.2009) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.").

### 3. *Plaintiff Has Not Stated a Fourteenth Amendment Claim Against the City Defendants*

To succeed in pleading a selective enforcement claim, a plaintiff must proffer sufficient factual allegations to show "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Harlen Associates v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (quoting *LaTrieste Rest. & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994)). The comparison must be to those who are "similarly situated in all material respects." *Sharpe v. City of New York,* No. 11 CIV. 5494, 2013 WL 2356063, *4 (E.D.N.Y. May 29, 2013)* (internal quotation marks and citation omitted). "The test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent." *Yajure v. DiMarzo,* 130 F.Supp.2d 568, 572 (S.D.N.Y.2001) (citing *Penlyn Dev. v. Village of Lloyd Harbor,* 51 F.Supp.2d 255, 264 (E.D.N.Y.1999) (noting that "apples should be compared to apples").

Plaintiff argues that he has adequately pled a selective enforcement claim given his allegations that (1) "[o]ther members of the audience, who jumped out of their seat, ran up to the stage, and physically accosted Lederman were not similarly charged or even approached by the police;" and (2) "[o]ther protestors who were holding up signs were not asked to put them down." (Pltf.Opp.Br.(Dkt. No. 22) at 7) Defendants argue that the alleged conduct of other audience members is not similar to that of Plaintiff, given that Plaintiff has not alleged that other audience members disrupted the event numerous times by interjecting their own comments. (City Def. Br. (Dkt. No. 19) at 13–14) This Court agrees.

**\*13** Plaintiff's selective enforcement claim fails because the Amended Complaint does not plead sufficient facts from which a reasonable person could infer that Plaintiff and the other audience members were similarly situated. It is apparent from the face of the Amended Complaint that Plaintiff was engaged in disruptive behavior. On at least three occasions, Plaintiff interrupted the panel event to express his unsolicited views. (Am.Cmplt.¶¶ 16–17, 22, 23–24) The Amended Complaint does not allege that other audience members stood up to make "announcements," or that other audience members interrupted attendees and panel members. Because the Amended Complaint does not contain sufficient factual allegations from which disparate treatment can be inferred, Plaintiff's Fourteenth Amendment claim will be dismissed.

### 4. *Plaintiff Has Stated a Monell Claim Against the City*

With respect to Plaintiff's Section 1983 claims against the City Defendants, only his First Amendment retaliation claim remains. While Plaintiff has not alleged sufficient facts to suggest that City policies and practices led to a deprivation of his First Amendment rights, he has sufficiently alleged that the act of a "final policy maker" caused such an injury.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell* 436 U.S. at 691.

" '[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives.' " *Vives v. City of New York,* 524 F.3d 346, 350 (2d Cir.2008) (quoting *Oklahoma City v. Turtle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). "Policy, in the *Monell* sense, may of course be made by the municipality's legislative body, ... but it also may be made by a municipal official 'possess[ing] final authority to establish municipal policy with respect to the action ordered.' " *Id.* (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur,* 475 U.S. at 480. "Where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," municipal liability under Section 1983 attaches. *Id.* However, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* Whether an official has final policymaking authority is a matter of state law. *Id.*

 **\*14** Here, the Amended Complaint does not allege any facts in support of Plaintiff's allegation that the City or the Parks Department has a policy, practice, or custom that caused the alleged violation of Plaintiff's constitutional rights. All of the Amended Complaint's claims about the City's purported policy are conclusory. *See, e.g.,* Am. Cmplt. ¶ 44 ("The City of New York has a historic and well known practice, policy and custom of harassing artists and others engaged in First Amendment protected activities, and violating their rights.").

With respect to Benepe's role in City government, the Amended Complaint does not allege that he is the City's "final policymaker" for purposes of the Parks Department, but that can be fairly inferred from Plaintiff's reference to him as "Parks Commissioner." (*Id.* ¶¶ 1, 9) The alleged constitutional violation concerns the chilling of Plaintiff's speech concerning the issue of public park privatization. Plaintiff alleges that Benepe threatened him with arrest at the Museum event, and that Benepe "ha[d] personally ordered Plaintiff's arrest at least two times before[.]" (Am.Cmplt.¶ 46) Under *Monell,* the City can be held liable if Benepe used his policy-making authority to silence critics of the Parks Department, as Plaintiff alleges. Accordingly, the City's motion to dismiss for failure to state a *Monell* claim is denied to the extent that Plaintiff has pleaded a First Amendment retaliation claim.

### 5. *Benepe is Not Entitled to Dismissal at this Stage of the Proceedings on Qualified Immunity Grounds*

Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The defense shields government officials from civil liability ' "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow,* 457 U.S. at 818).

A defendant is entitled to dismissal on qualified immunity grounds where the rights allegedly violated were not clearly established at the time of the alleged constitutional deprivation, *Islam v. Fischer,* No. 07 Civ. 3225(PKC), 2008 WL 110244, at \*5–6 (S.D.N.Y. Jan.9, 2008), or where there is no plausible factual dispute as to ' "whether ... a reasonable [government official] should have known he acted unlawfully....' " *Id.* (quoting *Lennon,* 66 F.3d at 421). Where a complaint's allegations are such that "reasonable officials in defendants' positions could disagree as to whether defendants' ... actions against plaintiff were unlawful," the defendant is entitled to judgment as a matter of law on the issue of qualified immunity. *Id.* at \*4 (citing *Lennon,* 66 F.3d at 421).

 **\*15** Benepe's qualified immunity defense cannot be decided as a matter of law on the current record. Whether a reasonable official would have known—under the circumstances here—that his actions were unlawful depends on the type of forum at issue and the motive underlying Benepe's purported threat. It is well established, for example, that government restrictions on speech must be reasonable and viewpoint-neutral—even where the action occurs in a non-public government forum. *See Hotel Employees,* 311 F.3d at 546 (noting that restrictions on speech are still subject "to the requirements of reasonableness

and viewpoint neutrality"). The factual record must be more fully developed before Benepe's qualified immunity defense can be resolved as a matter of law.

### CONCLUSION

For the reasons stated above, the City Defendants' motion to dismiss is granted in part, and denied in part. The Museum Defendants' motion to dismiss is denied without prejudice. Plaintiff is granted an additional thirty days from the date of this order to effect service on the Museum Defendants. The Clerk of the Court is directed to terminate the motions (Dkt.Nos.17, 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1318356

---

### Footnotes

1    The Amended Complaint recounts Plaintiffs involvement in the following lawsuits: *Bery v. City of New York,* 97 F.3d 689, 697 (2d Cir.1996) (holding, inter aha, that a City licensing regime violated street artists' First Amendment rights); *Lederman v. United States,* 89 F.Supp.2d 29, 42 (D.D.C.2000) (finding First Amendment violation where regulation created a no-demonstration zone around the United States Capitol); and *Lederman et al. v. New York City Dep't of Parks and Recreation,* 10 Civ. 4800(RJS) (challenging City regulation restricting locations where street vendors may sell their wares). Lederman's action against the Parks Department was dismissed in a 2012 decision by Judge Sullivan, which the Second Circuit affirmed in 2013. *Lederman v. New York City Dep't of Parks & Recreation,* 901 F.Supp.2d 464, 481 (S.D.N.Y.2012), *aff'd,* 731 F.3d 199 (2d Cir.2013).

2    *See* MCNY Local Rule 7.1 disclosure statement (Dkt. No. 4).

3    According to Milner, Sarah David is Dr. Henry's secretary. (Milner Decl. (Dkt. No. 21–5) ¶ 3) Dr. Henry, however, attests that she does not have a secretary and was handed the papers by "Sarah Greenbaum," who is a MCNY receptionist. (Henry Aff. (Dkt. No. 27) ¶ 2)

4    The cases cited by Plaintiff (Pltf.Opp.Br.(Dkt. No. 22) at 18) are thus not on point. *See Spector,* 119 A.D.2d 565 (2d Dep't 1986) (process server left documents in defendant's mailbox after defendant answered intercom but refused to meet process server at building's entrance); *Bossuk v. Steinberg,* 58 N.Y.2d 916, 918, 460 N.Y.S.2d 509, 447 N.E.2d 56 (1983) ("[I]f the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door, provided the person to be served is made aware that he is doing so.") (internal citations omitted). *McDonald v. Ames Supply Co.,* 22 N.Y.2d 111, 291 N.Y.S.2d 328, 238 N.E.2d 726 (1968) is irrelevant; that case was superseded by statute. *See Macchia v. Russo,* 67 N.Y.2d 592, 593, 505 N.Y.S.2d 591, 496 N.E.2d 680 (1998) (citing N.Y. C.P.L.R. § 308(2)).

5    Plaintiff's reliance on *Fashion Page. Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265, 268–273, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980) is similarly misplaced. The process server in *Fashion Page* served an individual who was authorized to accept service and who had done so regularly on the defendant corporation's behalf for five years. Here, by contrast, Milner never asked the receptionist whether she was authorized to accept service of process on behalf of Dr. Henry or the MCNY. *Compare Fashion Page,* 50 N.Y.2d at 269, 428 N.Y.S.2d 890, 406 N.E.2d 747 (noting that "defendant's

receptionist and the secretary herself identified the secretary "as a person authorized to accept service for the corporation) *with* Milner Decl. (Dkt. No. 21–5) (stating that Plaintiff's process server "asked to see Sarah Henry to deliver some important business documents").

6    In urging this Court to consider the videos, the City Defendants cite *Lu v. City of New York et al.,* No. 12 Civ. 2198(JAN), slip op. (Dkt. No. 24) at 2 (S.D.N.Y. Feb. 19, 2013). *Lu* is not helpful here, because the complaint in that case incorporated the video at issue by reference. (*Id.*)

The City Defendants also note that Plaintiff's counsel has stated that she has "no objection whatsoever" to this Court considering the videos in connection with the motion to dismiss. (City Def. Br. (Dkt. No. 19) at 6) (citing May 6, 2013 Transcript (Dkt. No. 11) at 8). Plaintiff's counsel's consent to this approach does not demonstrate that it is appropriate under the law for this Court to consider the videos on a motion to dismiss.

7    *See, e.g., Matson v. Bd. of Educ. of City Sch. Dist. of New York,* 631 F.3d 57, 69 (2d Cir.2011) (approving district court's rejection of plaintiff's affidavit and noting that ' "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment' ") (quoting *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir.1991)).

8    The government, of course, may impose valid time, place, and manner restrictions on speech and other expressive activity. "A major criterion" for those restrictions, however, is that they ' "not be based upon either the content or subject matter of speech.' " *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 648, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (quoting *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)). Even when government officials are permitted to exclude speakers from certain fora entirely, their actions remain subject "to the requirements of reasonableness and viewpoint neutrality." *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation,* 311 F.3d 534, 546 (2d Cir.2002) (citing *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). The proper level of scrutiny for government action depends on the forum at issue. The forum issue often involves a "a fact intensive analysis" that is not well-suited to a motion to dismiss. *Wandering Dago Inc. v. New York State Office of Gen. Servs.,* 1:13–CV–1053 MAD/RFT, 2014 WL 201968, at *1, *9–*19 (N.D.N.Y. Jan.15, 2014) (citing *Zalaski v. Bridgeport Police Dep't,* 613 F.3d 336, 343 (2d Cir.2010) (expressing concern about district court's forum analysis in light of "sparse" factual record).

---

**End of Document**                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

[1]    **Civil Rights**  🔑  **Criminal prosecutions**

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

50 Cases that cite this headnote

[2]    **Conspiracy**  🔑  **Civil rights conspiracies**

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

395 Cases that cite this headnote

**\*103**  **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

**\*\*1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ——— U.S. ———, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

**2  [2]    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no  **105 indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.